**[DO NOT PUBLISH]**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

----------------------------------------

**No. 04-13956**
**Non-Argument Calendar**

----------------------------------------

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 18, 2005
THOMAS K. KAHN
CLERK

BIA No. A95-227-558

LUIS FABRICIANO RICO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

----------------------------------------------------------------

**Petition for Review of an Order of the**
**Board of Immigration Appeals**

----------------------------------------------------------------

**Before EDMONDSON, Chief Judge, ANDERSON and BIRCH, Circuit Judges.**

**PER CURIAM:**

Luis Fabriciano Rico, a native and citizen of Colombia, petitions pro se for

review of the final order of the Board of Immigration Appeals (BIA), which

affirmed the immigration judge's denial of asylum, denial of withholding of removal, and denial of relief under the United Nations Convention Against Torture (CAT). Removal proceedings commenced after 1 April 1997; the permanent provisions of the Immigration and Nationality Act, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996), govern this petition. We deny the petition.

Rico argues that he established past persecution and a well-founded fear of future persecution on account of (1) his political opinion, due to his affiliation with "Movement Leaders in Action" (LEA), a group belonging to the Colombian Liberal Party, and (2) his membership in a social group: Oasis, a gay/lesbian organization that helped bisexuals, transsexuals, and people infected with HIV. Rico contends that, because of his membership in LEA and his participation in political campaigns, the Revolutionary Armed Forces of Colombia (FARC) in 1995 threatened him with death and tried to demand a "war tax" on his farm; in 1996 FARC eventually assassinated his nephew, who was in charge of the farm. Further, because of his active involvement with LEA and with Oasis, and because he is gay and HIV positive, Rico asserts that he was targeted by the Colombian United Auto Defenses (AUC), a paramilitary group that (1) in May 1998 committed a "massacre" that Rico protested against, (2) beginning in June 1998

2

threatened his and his family's lives with over one hundred phone calls, (3) in August 2000 killed one of Rico's friends, Jarro Ospina, who also was an Oasis and LEA activist, (4) told Rico that he was next on the list, and (5) in February 2001, sent three members to Rico's parents' house to kill him. Rico also claims that his companion, Juan Carlos Rodriguez, was granted asylum based on his participation in LEA and his gay status.

We review the IJ's findings of fact under the "substantial evidence" test: we must affirm the IJ's decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar v. Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir. 2001) (citation omitted).[1] "To reverse the IJ's fact findings, we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Attorney Gen., 327 F.3d 1283, 1287 (11th Cir. 2003). We also review the IJ's credibility determinations under the "substantial evidence" test. D-Muhumed v. U.S. Attorney Gen., 388 F.3d 814, 818 (11th Cir. 2004). And on credibility determinations, we may not substitute our judgment for that of the IJ. Id.

---

[1]The BIA affirmed the IJ's decision without opinion: we review the IJ's decision as the final agency determination. See Forgue v. U.S. Attorney Gen., 401 F.3d 1282, 1285 n.2 (11th Cir. 2005).

An alien may obtain asylum if he is a "refugee": a person unwilling to return to his country of nationality "because of persecution or a well-founded fear of persecution on account of," among other things, political opinion and membership in a particular social group. 8 U.S.C. §§ 1101(a)(42)(A), 1158(a)(1), (b)(1). The asylum applicant bears the burden of proving statutory "refugee" status with specific and credible evidence. Al Najjar, 257 F.3d at 1284, 1287.

Here, the IJ determined that, because Rico was not credible, he failed to show that he qualified for asylum relief. Substantial evidence supports the IJ's adverse credibility determination. First, we share the IJ's concerns that Rico failed to mention in his initial asylum application his claims of AUC persecution on account of his membership in Oasis and his status as gay and HIV-positive. These claims are significant; and Rico relies on them as much as his claims of persecution based on his LEA membership, which was the foundation of his initial application. But Rico only raised these claims in a second asylum application filed ten months after his initial asylum application. Rico's counsel stated that Rico was seeking asylum on "different grounds" and was submitting a "whole new application." And Rico did not include in his second application the facts he included in the first application. We could affirm the IJ's adverse credibility determination on this basis alone: the two applications contained completely

4

separate grounds for relief. We also express doubt about Rico's explanation on why he did not include this information in the initial application: despite his life being threatened, he asserts that, at the time, he did not know that he could seek asylum on these grounds and he did not want the IJ to be prejudiced toward him because of his sexual orientation.

Even if we believe Rico's explanation for why he did not raise these claims initially -- and construe his second application as a supplement to the first application -- we still conclude that substantial evidence supports the IJ's adverse credibility determination. We initially note that Rico's asylum applications, as a whole, generally were consistent with his testimony at the asylum hearing. But several major, unexplained facts and inconsistencies support the adverse credibility determination.

At the hearing, Rico testified in detail about his involvement as an LEA member in protesting the AUC's 1998 massacre and its subsequent many phone threats. Rico, however, did not mention the harassing telephone calls in either application, did not mention that the AUC in particular was responsible, and did not provide evidence corroborating the threatening phone calls.[2] Also, Rico's

---

[2]Rico only mentioned that he was threatened and that his partner, Rodriguez, received threatening phone calls. And Rico did not mention the frequency of the threats to him or whether these threats were made by telephone.

testimony about the asylum status of his companion, Rodriguez, is dubious. Rico suggested that Rodriguez was granted asylum at least in part because he is gay. But Rico later stated that Rodriguez did not disclose that he was gay on his asylum application; and Rico did not submit evidence corroborating Rodriguez's asylum status. Further, Rodriguez was present at Rico's hearing but did not testify.

Important, Rico repeatedly traveled to Colombia from the United States during the time when he allegedly was being persecuted. And he failed to explain his statement that, despite his alleged persecution, he has custody of his daughter because she is "safer" with him than his mother. Both of these facts diminish the believability of Rico's fear of persecution. The inconsistencies in Rico's testimony are not minor: they call into question the grounds of Rico's asylum claim. See Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002) (stating that adverse credibility finding must go to the "heart" of the asylum claim and should not be based on minor inconsistencies). And as the IJ concluded, the documentary evidence that Rico presented does not compel a different conclusion.[3]

_____

[3] At most, the evidence that Rico submitted shows the problems in general that homosexuals and HIV-positive persons experience in Colombia, that Rico is HIV-positive, that Rico's nephew was shot to death while riding a motorcycle, that Rico complained in writing to Credhos, a Colombian human rights group, of the threats he received from FARC and the AUC because of his membership in the LEA, and that he was a member of Oasis. But this evidence did not address the concerns that the IJ had about Rico's credibility.

Rico contends that, if the IJ had unanswered questions after Rico testified, the IJ should have asked Rico.  But Rico -- not the IJ -- bears the burden of proving eligibility for asylum.  See 8 C.F.R. § 208.13(a).  In sum, the IJ provided cogent reasons for his credibility determination: these reasons are supported by substantial record evidence.  See D-Muhumed, 388 F.3d at 819 (citations omitted). We uphold the IJ's denial of asylum relief.[4]

**PETITION DENIED.**

---

[4]Because Rico has failed to establish a claim of asylum on the merits, he necessarily has failed to satisfy the higher burden for an applicant seeking withholding of removal, see Forgue, 401 F.3d at 1288 n.4, and CAT relief, see Al Najjar, 257 F.3d at 1303.